IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA        §
                                §
VS.                             §        CIVIL NO. 4:09-CR-122-Y
                                §
SALVADOR GARCIA-COVARRUBIAS (2) §
JUAN CARLOS GAONA-RODRIGUEZ (3) §

<u>ORDER DENYING IN PART AND GRANT IN PART MOTIONS TO SUPPRESS</u>

Pending before the Court is defendant Salvador Garcia-Covarrubias's Motion to Suppress (doc. #40). Also before the Court is the motion to suppress (doc. #57) filed by defendant Juan Carlos Gaona-Rodriguez. After conducting a hearing on the motions, the Court concludes that Garcia's motion will be granted in part and denied in part. Rodriguez's motion will be denied.


I.  Factual Background

On August 24, 2009, acting on an informant's tip, the Drug Enforcement Agency's Dallas-Fort Worth Airport Task Force began to arrange the purchase of a quantity of cocaine from Garcia and two other individuals. The informant told DEA special agent Jesus Gallo that the informant had met a woman, now identified as defendant Patricia Morales, who claimed to be able to deliver up to six kilograms of cocaine at a time. When the informant met with Morales and Garcia, Garcia told the informant he could deliver up to three kilograms at a time.

Acting under the supervision of Gallo and task force officer Tim Kasterke, the informant arranged through Morales another

meeting with Garcia to purchase cocaine. Garcia instructed the informant to meet him at Morales's home, 3301 Avenue J, Fort Worth, Texas, and told the informant he was waiting there. Officers surveilling that address saw a black Jeep Liberty with Texas license plate number 295 PPK parked in the driveway. The informant arrived at the address and entered the house. Inside were Garcia, Morales, and a third person, defendant Juan Carlos Gaona-Rodriguez.

Garcia showed the informant two kilograms of cocaine. The informant told Garcia that the money for the drugs was at a different location and instructed Garcia to follow him to that location. Morales and Gaona got into the black Jeep Liberty with Garcia, who was carrying the two kilograms of cocaine in a Coca-Cola box.

The informant contacted Gallo and told him about these events, including the fact that Garcia was carrying the cocaine in a Coca-Cola box. Gallo contacted the Fort Worth police and requested that a marked patrol car follow the Jeep. Officer M. McMeans of the Fort Worth police did so and, after witnessing the Jeep change lanes and turn into a parking lot without using a signal, McMeans pulled the Jeep over.

Officer McMeans requested that Garcia, who was driving, produce his driver's license. Garcia did not have one. Thus, officer McMeans placed Garcia in the back of his squad car while he attempted to determine Garcia's identity and whether he had any

2

outstanding warrants.  Officer McMeans also asked Morales for identification and Morales indicated that she did have outstanding warrants.  While the warrant check for Garcia was in progress, McMeans then sought and obtained consent from Garcia to search the Jeep.  During the search, officer McMeans discovered the Coca-Cola box and the cocaine and Garcia, Gaona, and Morales were all arrested.

Officers later went to Garcia's home.  Garcia's wife let the officers into the house.  The officers searched the house and seized Garcia's wallet and certain personal papers that, according to Garcia, contain information about his family in Mexico.  Garcia argues that his wife gave officers consent to search the house only to determine if anyone was hiding on the premises, and states that he fears for his family's safety if the information from the papers is disclosed.


II.  Analysis

Garcia challenges both the search of the Jeep and the search of his home.  As for the search of the Jeep, Garcia argues that officer McMeans impermissibly extended the duration of the traffic stop by questioning him after McMeans's computer check showed that Garcia had no warrants.  It was during this allegedly impermissible extension of the stop that Garcia-Covarrubias gave McMeans permission to search the Jeep.  Thus, Garcia argues, the consent

was invalid.  *Cf. United States v. Chaves-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993) (stating that consent given during an illegal detention does not remove the taint of the illegal detention "if it is a product of that detention and not an independent act of free will").

But the evidence presented during the hearing on Garcia's motion was that officer McMeans sought and obtained Garcia's consent to search the vehicle while the warrant check was in progress.  Officer McMeans specifically testified to this and Garcia offered no contradicting evidence.  As an incident to a valid traffic stop, an officer may request a driver's license, insurance papers, and vehicle registration.  *United States v. Santiago*, 310 F.3d 336, 341 (5th Cir. 2002).  An officer may also run a computer check of these records, to determine such matters as whether the driver is properly licensed or has warrants for his arrest and whether the vehicle is properly registered or is stolen.  *See United States v. Cavitt*, 550 F.3d 430, 436 (5th Cir. 2008).  An officer may question the subjects of the traffic stop while the check is being conducted.  *Santiago*, 310 F.3d at 341.  If an officer obtains the driver's consent to search the vehicle while this computer check is in progress, the traffic stop has not been impermissibly prolonged.  *See United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993).  Thus, the validity of the search turns simply on the validity of the consent.

Although not raised in his brief, during the hearing Garcia argued that his consent was not valid because he does not speak English. But the evidence presented at the hearing does not support this. McMeans testified that Garcia spoke with him in English and Gallo stated that Garcia told him, during an interview, that he speaks English. In fact, during the hearing, Garcia responded to several questions posed by the Court and by counsel before such questions were interpreted. Yet Garcia, who acknowledged that he has been in the United States for seven years, claimed to speak so little English that he could not even tell McMeans that he did not understand his questions. This is simply incredible. Thus, Garcia understood English sufficiently to give valid consent to search the Jeep. *Cf*. *United States v. Gonzalez*, 308 Fed. Appx. 794, 797 (5th Cir. 2009) (concluding defendant who was not fluent in English but was conversant with questioning officer gave voluntary consent).

Garcia does not otherwise challenge the voluntariness of his consent. And the evidence shows that his consent was, in fact, voluntary. McMeans did not use coercive procedures, but instead placed Garcia in the back of his patrol car with the windows down during the computer check and while seeking consent to search. Before searching the Jeep, McMeans informed Garcia of his right to refuse consent. Garcia testified at the suppression hearing, presenting himself as a person of reasonable intelligence, and

stated that he believed officer McMeans would not find any contraband. Thus, Garcia's consent to search the Jeep was voluntary and authorized. *Cf. Shabazz*, 993 F.2d at 438 (discussing the factors to consider in assessing whether consent was voluntary).

Moreover, even assuming that Garcia gave the challenged consent during an impermissible extension of the traffic stop, the cocaine would inevitably have been discovered by law enforcement. Evidence discovered as a result of a Fourth Amendment violation is nevertheless admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Officer McMeans testified that he could have arrested Garcia for the traffic violations and had the vehicle towed. The government also points out that none of the Jeep's occupants had a driver's license, further justifying a decision to impound the Jeep, even without an arrest. Under either scenario the vehicle would have been towed and an inventory search conducted, during which the cocaine would have been discovered. An "inventory search" of a vehicle temporarily taken into police custody does not violate the Fourth Amendment so long as the search is conducted pursuant to "standard police procedures" for the purposes of "protecting the car and its contents." *South Dakota v. Opperman*, 428 U.S. 364, 372-73 (1975).

Officer McMeans did acknowledge during his testimony that the he had not made the decision to arrest Garcia for the traffic violation and that the decision to impound a vehicle is within an officer's discretion under the policy of the Fort Worth police department.  But the government points out that McMeans knew the Jeep and its occupants were being investigated for narcotics trafficking and, therefore, McMeans would have exercised one of these options.  The Court agrees, and concludes that the cocaine would inevitably have been found during an inventory search.

Additionally, the Court concludes that the cocaine would have been found during a search conducted by DEA agents.  The government argues that at the point the traffic stop occurred, the DEA agents had probable cause to search the vehicle.  "It is well established that warrantless searches of automobiles are permitted by the Fourth Amendment if supported by probable cause." *United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir. 1993) (citing *United States v. Ross*, 456 U.S. 798 (1982)).  Indeed, "if probable cause justifies a search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 824.

Gaona argues that the agents did not have probable cause to either stop the Jeep or search it.  A traffic stop is a seizure of the driver of the vehicle as well as the passengers. *See Brendlin v. California*, 551 U.S. 249, 251 (2007).  Thus, Gaona may challenge

7

the traffic stop.  But there was sufficient cause to stop the vehicle and seize its occupants.  A traffic stop "is more analogous to a so-called *Terry* stop . . . than to a formal arrest." *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)); *see also United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  As such, a traffic stop need only be supported by reasonable suspicion; specific and articulable facts "that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur." *Lopez-Moreno*, 420 F.3d at 430.  Before pulling the Jeep over, officer McMeans observed the Jeep change lanes without using a turn signal and turn without using a turn signal, both violations of Texas law.  *See* Tex. Transp. Code Ann. § 542.301 (providing that a violation of the "Rules of the Road" subtitle of the Texas Transportation Code is a criminal offense); *see also* Tex. Transp. Code Ann. § 545.104(a) (requiring use of signal to indicate intention to turn or change lanes).  And "[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment." *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1997) *abrogated on other grounds by Smith v. Robbins*, 528 U.S. 259 (2000).  Consequently, the stop itself did not violate the rights of either Gaona or Garcia.

8

Gaona also argues that the officers did not have probable cause to search the Jeep after the stop. As a passenger, Gaona does not have standing to challenge the search of the Jeep. *United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir. 1993).

And it is clear that the agents did, in fact, have probable cause. The informant told the agents about Morales and her claimed ability to deliver, by way of Garcia, multiple kilograms of cocaine at a time. The agents knew that the informant had met with Morales and Garcia, who represented he could deliver up to three kilograms of cocaine. Under the supervision of agent Gallo and task force officer Kasterke, the informant arranged a meeting with Morales and Garcia at a particular address. Garcia contacted the informant, stating that he was waiting for the informant at that address, and officers observed a black Jeep Liberty at the address. The informant went to the address, observed the cocaine, and instructed the defendants to follow to a second location to receive the purchase money. The informant also saw Garcia take the cocaine with him as all of the defendants got into the Jeep. The DEA agents were aware of all of these facts at the time of the traffic stop. Such facts are sufficient to cause a reasonable officer to believe, to a fair probability, that a crime involving narcotics was occurring. *Cf. Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) *overruled on other grounds Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (discussing the standard for probable cause).

9

As for the search of the home, Garcia argues that the officers exceeded the scope of the consent given by his wife.  When the government relies on consent as authority for a search, it has the burden to prove that such consent was voluntarily given.  *See Santiago*, 310 F.3d at 343 n.4.  The government offered no evidence on the consent allegedly given by Garcia's wife.  Consequently, the Court will grant Garcia's motion as to the search of the house.

III.  Conclusion

In light of the forgoing, Gaona's motion to suppress is DENIED.  Garcia's motion to suppress is GRANTED to the extent that it seeks suppression of evidence found at his house.  Any and all evidence found during the search of Garcia's house is SUPPRESSED. Garcia's motion is, in all other respects, DENIED.

SIGNED December 16, 2009.

_Terry R. Means_
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE